UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BRIAN N.[1],

                              Plaintiff,

   v.                                       3:17-CV-835 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
DAVID B. MYERS, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed[2] applications for Disability Insurance Benefits ("DIB")

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

[2] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

and Supplemental Security Income ("SSI") on April 21, 2014, alleging disability beginning July 1, 2011. (Administrative Transcript ("T") at 92, 176-88). His applications were denied initially on September 19, 2014. (T. 106-11). Administrative Law Judge ("ALJ") John M. Lischak conducted a hearing on January 13, 2017, at which plaintiff and Vocational Expert ("VE") David A. Festa testified. (T. 20-59).

In a decision dated February 1, 2017, the ALJ found that plaintiff was disabled beginning on October 1, 2013. (T. 88-105). On March 28, 2017, the Appeals Council exercised its authority to *sua sponte* review the ALJ's decision pursuant to 20 CFR §§ 404.969 and 416.1469, and provided notice of same to plaintiff. (T. 168-73). In response, plaintiff provided additional evidence to the Appeals Council. (T. 415-29). In a decision dated June 26, 2017, the Appeals Council determined that plaintiff was not disabled at any time from his alleged onset date through the date of the ALJ decision. (T. 1-13). This Appeals Council decision was the Commissioner's final decision, and plaintiff timely sought review by this court.

## II. <u>GENERALLY APPLICABLE LAW</u>

### A. **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

3

whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id*. However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The Commissioner is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the Commissioner cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v.*

4

*Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III. FACTS

As of the date of the January 13, 2017 administrative hearing, plaintiff was 33 years old. (T. 33). In high school, he was placed in an alternative high school due to behavioral issues, but left after completing the tenth grade. (T. 33-34, 269, 296). His three children, ages 11, 10, and 3, resided with him every other week under a joint custody arrangement. (T. 42-43, 268).

Plaintiff's employment history included numerous positions as a laborer for various factories, loading docks, and moving companies. (T. 33-34, 217, 269). He was certified as a fork lift operator, and reported that he was typically able to learn new work tasks quickly. (T. 269). Despite these skills, he had never had a position longer than ten months before being terminated or quitting. (*Id.*) He reported that he lost several jobs due to interpersonal conflict with co-workers or supervisors. (*Id.*)

In October 2011, plaintiff was a passenger in a motor vehicle accident, and suffered neck and back injuries. (T. 257-266, 289). He was subsequently diagnosed with degenerative disc disease and arthritis, and reported chronic pain that was aggravated by physical activity. (T. 289, 345, 363). He also developed arthritis in both hands that made repetitive activities painful, and prevented plaintiff from performing daily activities such as washing dishes. (T. 289, 363). Plaintiff testified that his back pain made it difficult to sit, and he regularly needed to stand up or adjust his posture in order to relieve the pressure on his back. (T. 46).

5

The ALJ's decision and Appeals Council decision provide a detailed statement of the medical and other evidence of record. (T. 5-9, 95-98). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

**IV.   THE ALJ'S DECISION**

After finding that plaintiff met the insured status requirements through September 30, 2015, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 13, 2013. (T. 94). Next, the ALJ found that plaintiff's arthritis constituted a severe impairment. (T. 95-96). The ALJ also considered plaintiff's diagnosed mental impairments, including ADHD and antisocial personality disorder, at step two, but found no more than mild impairments during the relevant period. (T. 96). At the third step, the ALJ determined that plaintiff's impairments or combination thereof did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 96-97).

The ALJ made two separate RFC determinations at step four of the analysis. First, the ALJ found that plaintiff had the RFC to perform a full range of work at all exertional levels prior to October 1, 2013. (T. 96-98). Next, the ALJ found that, beginning on October 1, 2013, plaintiff had the RFC to perform less than the full range of sedentary work. Specifically, he found that plaintiff could sit for four or five hours in an eight hour workday; could stand and/or walk for two to three hours during the workday; could lift ten pounds frequently; and must be allowed to change position from sitting to standing every hour. (T. 99). In making these RFC determinations, the ALJ

stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling ("SSR") 96-4p. (T. 97). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 as well as SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id*.)

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not fully supported prior to October 1, 2013, due to a lack of any treating source statement addressing any physical or mental work limitations during the earlier period. (T. 98). The ALJ next found that plaintiff did not retain the capacity to perform any of his past relevant work after October 1, 2013. (T. 99). Relying on the VE testimony, the ALJ determined at step five that there were no jobs in the national economy that plaintiff could perform after October 1, 2013. (T. 100). Accordingly, the ALJ determined that plaintiff was disabled from October 1, 2013 through the date of his decision. (T. 100-101).

## V.    <u>**THE APPEALS COUNCIL'S DECISION**</u>

The Appeals Council found that plaintiff met the insured status requirements through September 30, 2015, and had not engaged in substantial gainful activity since his alleged onset date. (T. 10). Next, the Appeals Council found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine;

7

osteoarthritis of the shoulders; and a labral tear in the left shoulder. (*Id*.) At step three, the Appeals Council determined that plaintiff's impairments or combination thereof did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (*Id*.).

At step four, the Appeals Council determined that plaintiff had the RFC to perform the full range of sedentary work. (T. 6, 10). Specifically, it found that plaintiff had the ability to sit, stand, and walk for up to eight hours each during the workday, and to lift, carry, push and pull up to ten pounds occasionally, and up to five pounds frequently. (T. 9). Next, the Appeals Council determined that plaintiff was unable to perform any past relevant work. (*Id*.) At step five, the Appeals Council relied on Rule 201.19 of the Medical-Vocational Guidelines to conclude that plaintiff's RFC permitted him to perform jobs which existed in significant numbers in the national economy. (T. 11). Accordingly, the Appeals Council reversed the finding of the ALJ, and found that plaintiff was not disabled from his alleged onset date through the date of the ALJ's decision.

## VI.   ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1. The Appeals Council's physical RFC assessment was not supported by substantial evidence due to their failure to properly evaluate the medical opinions and other evidence.[3] (Pl.'s Br. at 9-15, 16-19). (Pl.'s Br. at 11).

2. The Appeals Council improperly failed to consult a vocational expert.

---

[3] Plaintiff did not challenge the Appeals Council's RFC determination with regard to mental impairments in this proceeding.

8

(Pl.'s Br. at 15-16, 19).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 11-21) (Dkt. No. 14). For the reasons stated below, this court concludes that the Appeals Council erred in evaluating the medical evidence, and finds that the RFC determination, particularly with respect to plaintiff's capacity for prolonged sitting, was not supported by substantial evidence. As a result, the Appeals Council's step-five analysis, and the ultimate finding that plaintiff was not disabled, were tainted. Accordingly, the court recommends a remand for further administrative proceedings to properly assess the medical opinion and other evidence in connection with the Commissioner's RFC and disability determinations.

## DISCUSSION

### VII. RFC EVALUATION/TREATING PHYSICIAN

#### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical

9

facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion.

*Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

## B. Application

The full range of sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. Sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing SSR 83-10, 1983 WL 31251, at *5).

" . . . [T]he concept of sedentary work contemplates substantial sitting . . ., [and] alternating between sitting and standing may not be within the concept of sedentary work." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citations omitted). An "individual [who] may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting . . . is not functionally capable of doing . . . the prolonged sitting contemplated in the definition of sedentary work. . . . Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12, 1983 WL 31253, at *4.

In determining that plaintiff could perform the full range of sedentary work, the Appeals Council assigned "great weight" to the opinion of Dr. Rita Figueroa, who performed a consultative examination of plaintiff on July 30, 2014. (T. 5, 289-92). Dr.

Figueroa opined that plaintiff had "no limitations" with regard to standing, walking, bending, lifting, or pushing. (T. 291). Although Dr. Figueroa diagnosed plaintiff with chronic lower back pain, she offered no conclusions regarding plaintiff's capacity for prolonged sitting, and no opinion as to whether plaintiff would need to regularly alternate between sitting and standing during the workday. (*Id*.). During the examination, Dr. Figueroa did note that plaintiff did not need assistance getting on and off the examination table, and was able to rise from his chair without difficulty. (T. 290). However, these observations do not address the "prolonged sitting" that is typical in sedentary work. SSR 83-12.

Defendant contends that the Appeals Council could rationally conclude that if Dr. Figueroa believed that plaintiff would have difficulties sitting, then she would have mentioned it in her detailed report. (Def. Br. at 11). However, the Commissioner may not reasonably construe the omission of any conclusion regarding prolonged sitting as a conclusion that plaintiff satisfied the requirements of sedentary work, without seeking clarification from the doctor. *See, e.g.*, *Vongsouvanh v. Comm'r of Soc. Sec.*, No. 6:13-CV-1581 (TJM/ATB), 2015 WL 926200, at *10 (N.D.N.Y. Mar. 3, 2015) (the omission of any conclusion from the consulting examiner regarding prolonged sitting could not have been reasonably construed by the ALJ as a conclusion that plaintiff could sit for six hours in an eight-hour day); *Tricic v. Astrue,* No. 6:07-CV-997 (NAM), 2010 WL 3338697, at *3-4 (N.D.N.Y. Aug. 24, 2010) (determination that plaintiff could stand/walk and sit for about six hours in an eight-hour workday was not supported by substantial evidence where two treating doctors opined that plaintiff should avoid

prolonged sitting and/or standing, and no examining doctor provided a specific opinion about plaintiff's ability to sit or stand for particular periods of time); *see also Miller v. Colvin*, No. 15-CV-6249P, 2016 WL 4478690, at *14 (W.D.N.Y. August 25, 2016) ("an ALJ should not interpret a physician's silence on a particular limitation as an opinion from the physician that the limitation does not exist"). This principle is particularly applicable here. There is no indication in Dr. Figueroa's examination notes that her silence was meant to "express [an] opinion on [the] subject" of plaintiff's sedentary work capacity. *Rosa*, 168 F.3d at 81 (citation omitted). Under these circumstances, the Commissioner was precluded from relying on the consulting examiner's omission as the primary evidence on this issue. *Id.*; *see also Sobolewski v. Apfel*, 985 F.Supp. 300, 314 (E.D.N.Y.1997) ("[T]he burden of proof is on the Commissioner to offer positive evidence that plaintiff can perform sedentary work, and the burden is not carried merely by pointing to evidence that is consistent with his otherwise unsupported assertion.").

Even if Dr. Figueroa had implied an opinion that the plaintiff had no limitations with respect to sitting or standing, that alone would not have provided substantial evidence to support the ALJ's rejection of a conflicting opinion from a treating source. *See, e.g.*, *Murphy v. Comm'r of Soc. Sec.*, No. 3:13-CV-960 (GTS/ATB), 2015 WL 64440, at *9 (N.D.N.Y. Jan. 5, 2015) (the ALJ erred in finding that the plaintiff could sit for six hours in an eight-hour workday without any further limitation, by selectively relying on a consulting doctor who saw plaintiff once, and by rejecting contrary medical evidence from other sources, including a treating physician); *DiVetro v.*

13

*Commissioner of Social Sec.*, No. 5:05-CV-830 (GLS/DEP), 2008 WL 3930032, at *12 (N.D.N.Y. August 21, 2008) (consulting examiner's opinion that plaintiff has no "gross limitation" in her ability to sit does not support the ALJ's finding that plaintiff could sit for eight hours in a given workday); 20 C.F.R. §§ 404.1527(c)(2)(I) & (c)(5), 419.927(c)(2)(I) & (c)(5) (Commissioner will generally give more weight to opinions of treating sources who have treated plaintiff for a prolonged period and/or who are specialists whose opinions relate to their area of medical specialty).

In this case, there were multiple treating source opinions in the record that directly addressed plaintiff's ability to meet the sitting requirements of sedentary work. On December 15, 2016, plaintiff's treating physician Dr. Gary Dean endorsed an opinion prepared by treating source Dr. Nahid Borogerdi.[4] (T. 403-404). In that report, Dr. Dean opined that plaintiff could sit for approximately four to five hours out of an eight hour workday, but estimated that plaintiff would need to alternate positions between sitting or standing about once every hour. (T. 404). The Appeals Council assigned this opinion "little weight," citing a lack of support in the record. (T. 5).

Plaintiff also provided the Appeals Council the April 27, 2017 opinion of treating physician Dr. Kyung Kim. (T. 428-29). Dr. Kim opined that plaintiff was capable of sitting for eight hours during the workday, but would require the ability to alternate sitting and standing at will, or at least every hour. (T. 429). Dr. Kim also opined that plaintiff could perform no lifting at all. (*Id.*) The Appeals Council assigned Dr. Kim's

---

[4] Dr. Borogerdi's signature indicates that she is a family nurse practitioner who holds a Ph.D. (T. 404).

opinion "some weight," because it found no support for the conclusion that plaintiff's shoulder injury prevented him from lifting any weight at all. (T. 6). The Appeals Council did not discuss Dr. Kim's opinion that plaintiff needed to alternate between sitting or standing on a regular basis.

Because Dr. Dean and Dr. Kim were treating physicians, the Appeals Council was required to provide "good reasons" for discounting their opinions. The Appeals Council provided no reasons for ignoring either physician's opinion that plaintiff would need to regularly alternate positions during the workday. (T. 5-6). In discussing the Dean/Borogerdi opinion, the Appeals Council only noted that the section of the questionnaire that asked for the name of plaintiff's diagnosed conditions was left blank. (T. 5, 403). The Appeals Council also cited treatment notes that depicted plaintiff with a normal gait, full range of motion in most joints, and minimal sensory loss. as well as an MRI report that showed only a mild disc bulge. (T. 5, 306, 314, 361, 366). However, the Appeals Council cited no medical opinion evidence suggesting that these objective clinical findings undermined the treating physician opinion that plaintiff could only sit for four to five hours total, and needed to frequently alternate positions while sitting. *See, e.g., Messina v. Comm'r of Soc. Sec.*, __ F. App'x __, 2018 WL 4211602, at *4 (2d. Cir. Sept. 5, 2018) ("The fact that [plaintiff] could occasionally lift 20 pounds and did not use a cane does not undermine [treating physician's] unrelated conclusion that [plaintiff] could not sit for more than one to three hours during an 8-hour work day.").

As to Dr. Kim's opinion, the Appeals Council explained that it discounted the

15

lifting restrictions because it found no support in the treating record for such extreme limitations. (T. 6). The Appeals Council noted that plaintiff reported being able to lift some weight, and cited Dr. Kim's conservative treatment of his shoulder impairment. (T. 6, 43-44, 358, 421). However, the Appeals Council never addressed the remainder of Dr. Kim's opinion. Instead, it appears to have adopted Dr. Kim's opinion that plaintiff could sit, stand or walk for eight hours during the workday, while simply ignoring his related restriction that plaintiff would need to alternate positions every hour. (T. 5, 10).

Due to the lack of any explanation, this court cannot determine what the Appeals Council found lacking in the treating physician opinions. Even if the clinical findings were inadequate or inconsistent, the Commissioner bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly. *Rosa*, 168 F.3d at 79. This failure to comply with the treating physician rule requires remand for proper consideration of the medical evidence.

On remand, the Commissioner must properly evaluate the medical opinion and other evidence, with due deference to treating sources. The Commissioner should re-assess plaintiff's credibility based on a proper evaluation of the medical evidence and the other factors specified in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Commissioner must set forth an RFC determination, and explain the basis for that determination, with sufficient specificity to allow meaningful review.[5]

---

[5] Plaintiff argues that the Appeals Council also erred in its RFC determination with regard to plaintiff's ability to stand, walk, and lift. (Pl.'s Br. at 10-11, 16-17). This court does not address these arguments in this decision. As this matter is being remanded for proper assessment

## VIII. STEP FIVE

### A. Legal Standards

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). "Work which exists in the national economy" means work existing in significant numbers "either in the region where the individuals live or in several regions of the country." *McCusker v. Comm'r of Soc. Sec.*, No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (quoting SSR 82-53, 1982 WL 3134, at *3 (1982) (internal quotation marks removed).

In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("the Grids"). *Id.* The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996). *See also* 20 C.F.R. §§ 404.1567 & 416.967. Each exertional category of work has its own Grid, which then takes into account the plaintiff's age, education, and previous work experience. *Id.* Based on these factors, the Grids help the ALJ determine whether plaintiff can engage in any other substantial work that exists in the national economy. *Id.*

---

of the treating physicians' opinion, and to request additional evidence from the treating physicians if necessary, the Commissioner should re-evaluate plaintiff's full RFC, including plaintiff's ability to stand, walk, and lift. *See Barton v. Colvin*, No. 3:13-CV-1199 (GTS), 2015 WL 5511999, at *5 (N.D.N.Y. Sept. 15, 2015).

17

"Although the grids are 'generally dispositive, exclusive reliance on [them] is inappropriate' when they do not fully account for the claimant's limitations." *Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted). When significant nonexertional impairments[6] are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity. *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21 (N.D.N.Y. Mar. 27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

B.   **Application**

As discussed above, the Appeals Council's assumption that plaintiff could meet the requirements of sedentary work for prolonged sitting without frequent changes of position was not supported by substantial evidence. Based on that assumption, the Appeals Council relied on the Grids to make a step five determination that was not supported by substantial evidence. (T. 9, 11).

SSR 83-12 provides that "most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task," and "unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will . . . a [VE] should be consulted to clarify the implications for the occupational base." SSR 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983). Therefore, upon reconsideration of the medical evidence related to

---

[6] A "nonexertional" limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

18

plaintiff's ability to sit for prolonged periods and need to alternate positions on remand, VE testimony may be necessary to determine whether the occupational base is eroded by plaintiff's non-exertional limitations. *See, e.g., Beylo v. Astrue*, No. 10-CV-354 (WGY), 2012 WL 4491043, at *11 (N.D.N.Y. Sept. 28, 2012).

## IX. <u>NATURE OF REMAND</u>

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical opinion and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision.

Dated: September 10, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge